UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL H.,<br><br>  Plaintiff,<br><br> v.<br><br>KILOLO KIJAKAZI,<br><br>  Defendant. | Case No. 22-cv-04728-JSC<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 23 |

Plaintiff seeks social security benefits for physical impairments, including: chronic back pain, herniated discs, arthritis in neck and back, and carpal tunnel syndrome in both hands. (Administrative Record ("AR") 252.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying his benefits claim. Now before the Court are Plaintiff's and Defendant's motions for summary judgment. (Dkt. Nos. 20, 23.[1]) After careful consideration of the parties' briefing, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings. The ALJ's findings regarding the severity of Plaintiff's mental impairment, the medical opinion evidence, and Plaintiff's subjective pain testimony are not supported by substantial evidence, but there are outstanding issues to be resolved requiring remand for further proceedings.

## BACKGROUND

### A. Procedural History

Pursuant to the Social Security Act (the "Act"), on July 14, 2018, Plaintiff filed: (1) an

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

application for a period of disability and disability insurance benefits under Title II of the Act; and (2) an application for supplemental security income benefits under Title XVI of the Act. (AR 15.) For each, Plaintiff alleged a disability onset of September 1, 2011. (*Id*.) Plaintiff's application was denied initially and upon reconsideration. (*Id*.) Plaintiff submitted a timely request for a hearing before an Administrative Law Judge (ALJ) on December 6, 2018. (AR 145-146.) A hearing was held on September 5, 2019 in Oakland, California, where Plaintiff and a vocational expert (VE) testified. (AR 15.) On October 7, 2019, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled within the meaning of the Social Security. (AR 15-27.)

Plaintiff filed a timely request for review with the Appeals Council, which the Appeals Council denied. (AR 221, 535-540.) Plaintiff sought review in the district court, and on September 10, 2021, the Court remanded for further proceedings. (AR 542-557; *Paul H. v. Saul*, No. 20-CV-05783-JSC, 2021 WL 4133861 (N.D. Cal. Sept. 10, 2021).) While the appeal was pending in this Court, Plaintiff filed a subsequent application for Title XVI benefits. (AR 580.)

The Appeals Council consolidated the remanded action and the new application, and directed the ALJ on remand to properly weigh the medical opinion evidence and Plaintiff's pain symptoms, and determine the severity of Plaintiff's impairments and residual functional capacity in light of all of the evidence. (AR 454, 578-583.) A telephonic hearing was held before an ALJ on May 15, 2022, where Plaintiff and a vocational expert testified. (AR 454.) On June 1, 2022, the ALJ issued an unfavorable decision finding Plaintiff able to perform his past work as a customer service representative. (AR 454-477.) Plaintiff thereafter filed the underlying action.

In accordance with Civil Local Rule 16-5, the parties filed cross motions for summary judgment. (Dkt. Nos. 20, 23.)

**B. Issues for Review**

1. Did the ALJ err in determining Plaintiff's severe impairments?
2. Did the ALJ err in evaluating the medical evidence?
3. Did the ALJ err in evaluating Plaintiff's subjective pain testimony?
4. Did the ALJ err in determining Plaintiff's residual functional capacity and Plaintiff's ability to perform his past work?

1          5.  Should the Court remand for payment of benefits or further proceedings?

## LEGAL STANDARD

A claimant is considered "disabled" under the Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough he is unable to do his previous work and cannot, based on his age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, he can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds; *see* 20 C.F.R. § 404.1520(a).

## DISCUSSION

### I. The ALJ's Finding of No Severe Mental Health Impairment

The ALJ found Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy and joint pain of the bilateral hands, but found there was a "lack of objective evidence to substantiate the existence of a medically determinable mental impairment." (AR 458.) An impairment is considered severe if it "significantly limits the claimant's physical or mental ability to do basic work activities." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th. Cir. 2020) (internal quotations and citations omitted).

The plaintiff has the burden to demonstrate the existence of a medically determinable impairment through medical evidence. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also* 20

C.F.R. § 404.1508 (providing claimant must establish existence of medically determinable impairment from "medically acceptable clinical and laboratory diagnostic techniques"). The Ninth Circuit has recognized, however, the step two inquiry is a "de minimis screening device used to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th. Cir. 2001) (internal quotation marks and citation omitted). Indeed, the ALJ can find an impairment or combination of impairments non-severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks and citations omitted.) On review, this Court's duty is to determine "whether the ALJ had substantial evidence to find that the medical evidence clearly established" Plaintiff did not have a severe mental impairment. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff contends the ALJ's finding he had no severe mental impairment was in error given the findings of consultative examiner Dr. Katherine Wiebe. Following two two-hour sessions in June 2021 and June 2022, Dr. Wiebe diagnosed Plaintiff with unspecified mental disorder, unspecified personality disorder, histrionic and turbulent personality traits, and compulsive and narcissistic personality features. (AR 841-47, 1062-68.) Dr. Wiebe concluded "[d]ue to his psychiatric, personality disorder and somatic symptoms, he would have difficulties performing a regular job." (AR 1048.) The reasons the ALJ provided for implicitly rejecting Dr. Wiebe's findings are not supported by substantial evidence.

First, the ALJ concluded Dr. Wiebe's diagnosis did "not reasonably result from psychological abnormalities which are demonstrable by medically acceptable clinical or laboratory techniques." (AR 458.) It is unclear, however, what the ALJ meant by this statement. Dr. Wiebe conducted two two-hour sessions with Plaintiff wherein she administered a battery of psychological tests, the results of which were discussed in her reports which totaled 13-14 pages each. (AR 841 (listing tests performed to measure Plaintiff's cognitive and emotional functioning) 1062-62 (same).)

Second, the ALJ found Dr. Wiebe's diagnosis was inconsistent with Plaintiff's affirmative denials of mental impairments. (AR 458.) While Plaintiff denied being depressed both to Dr.

4

Wiebe and in his interview, the ALJ fails to account for Dr. Wiebe's finding Plaintiff's "[d]enial tendencies indicate that he may be covering up significant clinical syndrome symptoms. His responses indicate an effort to present a socially acceptable front and resistance to admitting personal shortcomings." (AR 846, 1067.) Likewise, the ALJ's reliance on "observations of the claimant as pleasant and conversant," "generally normal mental status findings by the claimant's medical providers," and his own statements regarding "his long-term friendship with his landlady," ignore Dr. Wiebe's finding Plaintiff is "[f]earful of being viewed as irresponsible or slack in his efforts, as one who fails to meet the expectations of others, or as someone who is error prone, he may overvalue those aspects of his self-image that signify perfectionism." (AR 1067.) Further, it is unclear why Plaintiff's ability to maintain a long-term friendship with his landlady would be inconsistent with having a severe mental impairment. The ALJ did not identify any evidence in the record supporting this conclusion.

Finally, the ALJ relied on "the lack of any mental health treatment." (AR 458.) However, "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis" for concluding a doctor's opinion regarding a claimant's mental condition is faulty. *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) ("[I]t is common knowledge that depression is one of the most underreported illnesses in the county because those afflicted often do not recognize that their condition reflects a potentially serious mental illness.").

Accordingly, the ALJ's finding of "a lack of objective evidence to substantiate the existence of a medically determinable mental impairment" is not supported by substantial evidence. While errors at step two may be harmless where the ALJ otherwise finds step two satisfied and the error is inconsequential to the ultimate issue of disability, the ALJ here failed to consider Plaintiff's mental impairments—even if they were non-severe—in his residual functional capacity analysis. *See Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (error at step two harmless and not a basis for remand where step two was decided in claimant's favor and all impairments (including non-severe impairments) were considered in determining RFC). The error is therefore not harmless and requires remand. *See Bagby v. Comm'r of Soc. Sec.*, 606 F. App'x

5

888, 890 (9th Cir. 2015) (failure to include all credible limitations in RFC analysis made remand appropriate).

## II. Medical Opinion Evidence

SSA has established a new regulatory framework for evaluating medical opinions for applications such as this filed on or after March 27, 2017. *See Woods v. Kijakazi*, 32 F.4th 785, 789-792 (9th Cir. 2022); *see also* 20 C.F.R. §§ 404.1520c, 416.920c (2017). The new framework eliminates a hierarchy of or deference to medical opinions, and instead uses factors to determine the persuasiveness of a medical opinion. *See Woods*, 32 F.4th at 789-792. The factors are: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *P.H. v. Saul*, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (cleaned up) (quoting 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5)).

The most important factors in evaluating the persuasiveness of medical opinions are supportability and consistency. *See Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id*. at 791-92 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(2)). The third factor—"relationship with the claimant"— encompasses "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed, ... and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id*. at 792 (citing 20 C.F. R. § 404.1520c(c)(3)(i)–(v)). The ALJ must explain how he considered supportability and consistency, and may, but is not required to explain how he considered factors three, four, and five. *See id*. at 792; *see also* 20 C.F.R. § 404.1520c(b)(2).

Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion." *Woods*, 32 F.4th at 787. Rather,

the ALJ's decision must "simply be supported by substantial evidence." *Id*. The "ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id*. at 792 (cleaned up). "The agency must articulate how persuasive it finds all of the medical opinions and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. (cleaned up) (citing 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

Plaintiff argues the ALJ erred in finding examining physician Dr. Omar's Bayne's opinion only partially persuasive. The ALJ found Dr. Bayne's "general assessment that the claimant would be limited to a range of light work with additional postural and manipulative limitations" persuasive; however, the ALJ found multiple other parts of Dr. Bayne's opinion not persuasive. (AR 465.) Plaintiff challenges two particular aspects of the ALJ's rejection of Dr. Bayne's opinion.

First, the ALJ found that Dr. Bayne's assessment limiting Plaintiff to occasionally lifting 15 pounds was unpersuasive because "it is not supported by his own finding of the claimant's intact upper extremity motor strength or consistent with the evidence in the medical records of claimant's intact upper extremity range of motion and strength." (AR 466.) To the extent the ALJ relied on the cited portions of the record: Exhibits 4F/11, 14-15, 9F, 11F/20, 133, and 175, these medical records do not indicate Plaintiff can lift, rather they all reflect lower back/lumbar pain and/or reduced range of motion in his back. (AR 466 (citing AR 383, 386-86, 834-836,[2] 870, 983).) Further, the ALJ does not explain why Plaintiff's upper extremity motor strength is inconsistent with a limitation on his ability to lift. The ALJ does not identify evidence in the record demonstrating that Plaintiff's upper body strength means that he could lift without pain despite his lower back pain. Further, this determination belongs with an orthopedist such as Dr. Bayne and the ALJ provided no explanation for why his opinion in this regard would trump Dr. Bayne's. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (finding it inappropriate for

---

[2] While Dr. Rana's functional assessment opines Plaintiff could carry 20 pounds frequently (AR 836), the ALJ elsewhere in his opinion finds Dr. Rana's opinion unpersuasive. (AR 466.) It cannot then be substantial evidence supporting the ALJ's rejection of Dr. Bayne's limitation.

the ALJ to substitute his or her own medical judgment for those of medical professionals).

Second, the ALJ found Dr. Bayne's limitation of a total of four hours each standing/walking with a cane and sitting not persuasive. (AR 466.) The ALJ noted this opinion was consistent with Dr. Bayne's findings regarding Plaintiff's antalgic fait and loss of normal spinal rhythm when rising to standing, but found it "inconsistent with evidence that claimant did not consistently use a cane, with evidence of the claimant's regular exercise and ability to walk at least 20 minutes every day, with the claimant's own testimony that he generally used his cane if he expected to be out for more than one hour," and his testimony he needed to alternate positions throughout the day. (AR 466.) Again, the ALJ does not explain why these things are inconsistent. *Cf. Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("But the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony.") (emphasis in original). Why is Plaintiff's ability to walk 20 minutes a day inconsistent with the limitation he not walk for more than four hours a day? Similarly, why is the need to alternate positions inconsistent with a limitation of four hours a day walking/standing and another four hours sitting? While the ALJ is responsible for weighing the medical evidence, an ALJ may not substitute his own medical judgment for those of medical experts. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (stating the ALJ is "simply not qualified to interpret raw medical data in functional terms"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Accordingly, the ALJ's finding Dr. Bayne's 15-pound lifting limitation and his four-hour limitation each on walking/standing and sitting was not persuasive is not supported by substantial evidence.

**III. Subjective Symptom Testimony**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. "Second, if the claimant meets this first test, and there is no

evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up).  If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (cleaned up).

Applying the two-step analysis, the ALJ first determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 462.)  Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of his symptoms, or else find evidence of malingering.  *See Lingenfelter*, 504 F.3d at 1036.  The ALJ did not find evidence of malingering, but found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms not entirely consistent with the medical evidence and other evidence in the record." (AR 21.)  The ALJ offered three reasons for this conclusion: (1) lack of objective medical evidence to support Plaintiff's reports of disabling pain; (2) Plaintiff's conservative course of treatment; and (3) Plaintiff's activities of daily living.  (AR 463-465.)

### A. Objective Medical Evidence

The ALJ found Plaintiff's allegations of pain were inconsistent with the medical evidence in the record, and in particular, the objective evidence of "no more than moderate radiographic findings," his inconsistent use of a cane, and the mild musculoskeletal and neurological examination findings.  (AR 463-464.)  A lack of objective medical evidence to fully corroborate the severity of a claimant's symptoms is insufficient on its own, to reject the claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (internal citations omitted).

First, as to the radiographic findings, the ALJ emphasized Plaintiff having "repeatedly described his back pain as stable for many years without worsening and further described his radiculopathy symptoms as minimal in comparison to his back pain." (AR 463.)  The exhibits cited in support of this statement, however, do not support the ALJ's finding.  The first two exhibits reflect chronic—not stable—pain:

9

- Exhibit 4F/9-10: October 2018 visit notes state "[c]hronic pain for 18 years. Worse with prolonged standing, sitting, lifting, driving" (AR 381-382); and
- Exhibit 11F/21: November 2018 visit notes state pain at 9/10 (AR 868).

While Exhibit 11F/173, notes from a May 2021 visit, includes a note "[p]ain is not necessarily worsening or changing at this time, but is stable x many years. Some radiculopathy to the L leg, but primary discomfort is at the back itself," the very next sentence states while Plaintiff's pain improves with ice, it worsens with activity and he "[h]as been quite sedentary recently." (AR 1023.) Thus, that Plaintiff's pain is stable says nothing about its severity. The medical evidence reflects reports of "constant pain," "agonizing sharp pain," pain at 8-9/10, finding it "much harder to move," and increased pain following physical therapy sessions. (AR 849, 892, 925, 942, 954, 966.) Further, Plaintiff testified he has "good days and bad days" and "as I'm getting older, I have more bad days that good days." (AR 490.)

Second, while the ALJ appears to infer Plaintiff's reports of pain are not credible because he does not constantly use the cane, Plaintiff neither testified he requires constant use of the cane nor is there any evidence his medical providers recommended constant use of the cane or would expect he would need to use a cane consistently based on his symptoms. (AR 492.)

Finally, as discussed above, the record does not support the ALJ's finding Plaintiff's examinations "generally showed no apparent distress." (AR 463.) The ALJ also erred in cherry picking evidence supporting his mild examination findings, while ignoring the contrary evidence. *See Williams v. Colvin*, No. 14-cv-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (cleaned up) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."). For example, the ALJ relied on findings of "mild tenderness of the lumbar spine and bilateral hands and findings with full range of motion," but ignored Dr. Bayne's findings regarding Plaintiff's inability to walk on his heels and his toes, his slow antalgic gait, his inability to squat more than 50 percent of normal because of back pain, and his positive Tinel's test and positive Phalen's test for bilateral carpal tunnel syndrome. (*Compare* AR 464 *with* AR 363.)

//

**B. Conservative Course of Treatment**

The ALJ also found "the course of treatment prescribed for the claimant's impairments is not consistent with disabling impairments" because his symptoms were "conservatively treated with over-the-counter pain medications such as ibuprofen, physical therapy, a TENS units, two or three epidural injections, and a cane that he had used since approximately November 2015 although it was not prescribed until November 2019." (AR 464.)  The ALJ noted Plaintiff's self-report during a November 2018 neurosurgical consultation that sitting and changing position "alleviated his pain" and his physician's recommendation to "continue non-operative intervention such as pain management and/or physical therapy considering the claimant's lack of focal neurologic deficit, segmental instability, or uncompensated malalignment." (*Id*. (citing AR 868, 871).)  The ALJ, however, failed to note during this same visit Plaintiff reported pain at a 9/10, the pain was better with "changing positions frequently" *and* "sitting, lying down for brief periods," and worse with standing and walking.  (AR 868.)

Further, the medical records reflect less than a year later, in June 2019, following an updated MRI, Plaintiff's physician recommended "as much physical therapy as [he] can tolerate" and epidural injections because there were "[n]o good stats for patients over 50." (AR 970.) Indeed, Plaintiff testified he was looking for treatment outside of Kaiser because he wanted to "find a doctor or a facility that can provide me with – with some form of treatment, whether it's stem cell treatment or some new innovative surgery" after his Kaiser physician recommended against surgery due to his thinning vertebrae and the potential it could break.  (AR 496.)  Despite this evidence, the ALJ failed to consider Plaintiff's age as a factor in the prescribed course of treatment.  The ALJ impermissibly inferred Plaintiff's pain testimony was exaggerated because his physician did not recommend more aggressive treatment without first analyzing why the physician recommended the treatment he did.  *See* SSR 16-3p (stating ALJ must consider "possible reasons" for conservative treatment and an ALJ may need to contact the claimant or raise the issue at the hearing); *Eitner v. Saul*, 835 F. App'x 932, 933 (9th Cir. 2021) (citing SSR 16-3p and stating failure to pursue more aggressive treatment was not a clear and convincing reason to reject plaintiff's testimony because the "ALJ failed to consider possible reasons why claimant did not

11

seek or obtain treatment" and the ALJ only asked plaintiff whether he had received treatment, but "the inquiry ended there").

### C. Activities of Daily Living

Finally, the ALJ found Plaintiff's activities of daily living were inconsistent with the severity of the limitations alleged. (AR 465.) "[T]he ALJ may use ordinary techniques of credibility evaluation, including assessing inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct ... and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). If the ALJ makes a "specific finding" the plaintiff "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," that "may be sufficient to discredit a claimant's [symptom] allegations." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citation omitted).

Here, the ALJ concluded Plaintiff's "ability to go for at least 20-minute walks, exercise, stretch, drive short distances, shop for groceries, vacuum, and make the bed" were "inconsistent with [his] allegations of disabling impairments and support[ed] a finding that [he] could perform a range of light work with a sit/stand option and additional limitations to accommodate his symptoms." (AR 465.[3]) However, Plaintiff's ability to perform these activities, including walking 20 minutes a day, are not indicative of Plaintiff's ability to get through a typical workday—or at least the ALJ has not explained how they are indicative. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

Further, the ALJ ignored Plaintiff's testimony regarding limitations on his ability to perform these activities. *See Diedrich v. Berryhill*, 874 F.3d 634, 642–43 (9th Cir. 2017) ("The ALJ took note of certain daily activities that [plaintiff] could perform, such as bathing, cooking,

---

[3] The ALJ found Plaintiff's statements regarding his daily 20-minute walks consistent with self-reports of 210 minutes of exercise during a June 2019 appointment, 150 minutes during a December 2019 appointment, and 150 minutes of exercise during a May 2021 appointment. (AR 465 (citing AR 1023-1024).)

taking care of her cat, chores around the house, shopping, paying bills, and using a checkbook. But the ALJ ignored other evidence showing the difficulties [plaintiff] faced in everyday life."). Plaintiff testified a friend drives him grocery shopping and assists him with his groceries, he cannot do dishes because he cannot bend over a sink, so he uses paper plates, and the size of the area he lives in and maintains is the size of a queen size bed. (AR 506-507.) In addition, Plaintiff testified his back has gone out on him "on several occasions while walking," he needs to ice his back for 40 minutes at a time two to three times a day, and his pain increases once he removes the ice pack. (AR 499-501.) The ALJ did not address this testimony, and instead, concluded Plaintiff's limitations would be addressed by a sit/stand option, but did not explain how the ability to sit/stand at will would address Plaintiff's need to ice his back throughout the day, or what happens when his back goes out on him. (AR 465.)

*** 

In sum, none of the reasons given by the ALJ for discounting Plaintiff's testimony meet the specific, clear, and convincing standard, and the ALJ's rejection of Plaintiff's subjective pain testimony was in error.

## IV. Harmless Error

Given the ALJ's failure to consider any evidence regarding Plaintiff's mental impairment in his RFC, and the lack of substantial evidence to support his consideration of the medical evidence and subjective pain testimony, the ALJ's decision cannot stand. The Court thus need not consider Plaintiff's additional arguments regarding the ALJ's RFC finding. The ALJ's errors here go to the heart of the disability determination and are not harmless. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Had the ALJ not erred in his consideration of the medical opinion evidence and determining Plaintiff's credibility, the ALJ could have reasonably come to a different conclusion regarding Plaintiff's capacity to work. *See Stout*, 545 F.3d at 1056 (error was not harmless where crediting lay testimony supported a conclusion that the plaintiff's mental impairments would preclude him from returning to gainful employment).

13

**V. Remand for Further Proceedings or Payment of Benefits**

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal citations omitted). A remand for an award of benefits is proper however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal citations and quotation marks omitted).

Here, the first prong of the test is not satisfied because the record has not been fully developed. There are outstanding issues to be resolved before a final determination can be made given the ALJ's errors in (1) failing to consider whether even if Plaintiff's mental impairments were not severe, they impacted his residual functional capacity, (2) rejecting Dr. Bayne's opinion; and (3) discounting Plaintiff's symptom testimony.

The second prong of the test has been satisfied because the ALJ gave legally insufficient reasons for discounting Dr. Bayne's medical opinion as well as Plaintiff's symptom testimony. And substantial evidence does not support the ALJ's decision regarding the severity of Plaintiff's mental impairment.

The third prong, however, is not satisfied. It is not clear from the record the ALJ would be required to find Plaintiff disabled were the evidence properly credited. The Vocational Expert was not asked hypotheticals which took into account Dr. Wiebe's mental status limitations. Further, while Plaintiff argues Dr. Bayne's opinion is "most consistent with sedentary work" (Dkt. No. 20 at 19), Plaintiff has not established even if he was limited to a sedentary level of work, this would require a finding of disability, because it *also* requires a finding Plaintiff cannot return to his past relevant work as a customer service representative which, according to the vocational expert, is classified as a sedentary job (AR 510). (AR 510.) Further proceedings are therefore warranted to

14

flush out these issues.

The Court, however, notes this will be second time this matter has been remanded to the agency to address to the ALJ's consideration of the medical evidence—in particular Dr. Bayne's opinion—and Plaintiff's subjective symptom testimony. Further, as Plaintiff notes, while the case was assigned a different ALJ on remand, the second ALJ adopted an even less restrictive RFC than the prior ALJ. (Dkt. No. 20 at 22.) The Court is thus concerned "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke*, 379 F.3d at 595. Nevertheless, the Court is cognizant "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not a district court" and thus remands for further proceedings consistent with this order. *Marsh v. Colvi*n, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not a district court").

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Docket Nos. 20, 23.

**IT IS SO ORDERED.**

Dated:  August 22, 2023

JACQUELINE SCOTT CORLEY
United States District Judge